IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

LINDA A. ADAMS,
        Plaintiff,

-vs-

CAROLYN W. COLVIN, ACTING
COMMSSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,
        Defendant.

CAUSE NO.:
A-15-CA-00893-SS

### O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Linda Adams' Brief on Review of the Denial of Benefits by the Commissioner of Social Security [#14], Defendant Carolyn Colvin, Acting Commissioner of the Social Security Administration's Brief in Support of Commissioner's Decision [#15], Adams' Reply Brief [#16], the Report and Recommendation of United States Magistrate Judge Andrew Austin [#17], and the Social Security Transcript (Tr.) [#12]. Having considered the documents, the file as a whole, and the governing law, the Court now enters the following opinion and orders, ACCEPTING the Report and Recommendation and REVERSING the decision of the Commissioner.

All matters in this case were referred to United States Magistrate Judge Andrew Austin for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. Adams is entitled to de novo review of the portions of the Magistrate Judge's report to which she filed specific



objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Although Adams did not file any objections, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.

## Background

This is an appeal from a denial of social security disability benefits. On February 24, 2013, Plaintiff Linda Adams filed her application for Supplemental Security Income (SSI) benefits. Tr. 93–94. In her application, Adams claimed she has been disabled since February 1, 2007, due to eye problems, carpal tunnel syndrome, a head injury, high blood pressure, a shoulder injury, depression, anxiety, and post-traumatic stress disorder (PTSD). Tr. 252. The Commissioner denied Adams' initial application and request for reconsideration. Tr. 28. At Adams' request, a hearing on the benefits denial was held before Administrative Law Judge (ALJ) Mark Swayze on April 8, 2014. Tr. 28. Adams and her attorney, John Heard, attended the administrative hearing. Tr. 28. On May 2, 2014, the ALJ issued a decision finding Adams was not disabled under the Social Security Act. Tr. 37. The Appeals Council denied Adams' request for review on September 4, 2014. Tr. 9–14. Adams has exhausted her administrative remedies and now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## Analysis

**I.   Legal Standard**

Judicial review of the ALJ's decision is limited. Specifically, this Court reviews: (1) whether the ALJ's decision was supported by substantial evidence, and (2) if so, whether the ALJ made any errors of law in evaluating the evidence. *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993).

Procedurally, the administrative process need not have been perfect, and this Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Procedural errors are therefore a basis for remand only if they "would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988).

"Substantial evidence is evidence that a reasonable mind would accept as adequate to support the decision." *Id.* In making these determinations, the Court must "carefully scrutinize the record" to determine if there is substantial evidence to support the ALJ's conclusions, but the Court can neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). If the Court finds substantial evidence to support the ALJ's decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore is not disabled), the Commissioner follows a five-step process:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity (RFC) to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.

A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps. *Selders*, 914 F.2d at 618. At step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Id.* If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks and citation omitted).

## II. The ALJ's Opinion

As described by the Magistrate Judge, the ALJ employed the five-step sequential evaluation process to determine whether Adams was disabled. *See* 20 C.F.R. § 404.1520(a); Tr. 19–28. The ALJ found as follows. First, Adams had not been engaged in substantial gainful activity since February 24, 2012. Tr. 30. Second, Adams suffers from severe impairments of cervical degenerative disc disease, left humerus fracture status-post open reduction and internal

4

fixation (ORIF), hypertension, depression, anxiety, and a history of a substance abuse disorder. Tr. 30. Third, none of Adams' impairments, either alone or in combination, meet or medically equal any of the impairments listed in Appendix 1 of the regulations; thus, Adams' impairments are not presumptively disabling. Tr. 30–32.

Before reaching the fourth step, the ALJ determined Adams retains the RFC to perform light work as defined in 20 C.F.R. § 416.967(b). Tr. 32–33. Specifically, the ALJ determined Adams' RFC has the ability to perform and sustain light work:

> except frequent balancing, stooping, kneeling, crouching, crawling, and climbing of ramps/stairs; no climbing of ladders, ropes, or scaffolds; frequent handling and reaching in all directions on the left side; must avoid concentrated exposure to extreme temperatures, noise, irritants (such as fumes, odors, dust, gases, and poorly ventilated areas), and hazards (including dangerous machinery and unprotected heights); and can understand and carry out, and remember detailed, but not complex instructions, make decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to routine changes in the work setting.

Tr. 32–33.

Fourth, the ALJ determined Adams was capable of performing her past relevant work as a sales clerk, housekeeper, and security guard. Tr. 37. Accordingly, the ALJ concluded Adams was not disabled under the Social Security Act.

### III. Application

Adams argues the ALJ's conclusion she is not disabled is erroneous because the ALJ (1) failed to properly account for the established limitations on Adams' ability to utilize her left arm and shoulder, (2) failed to consider the functional limitations resulting from Adams' severe mental impairments, and (3) improperly concluded Adams' past work as a sales clerk, housekeeper, and security guard constituted relevant work. Because the Court agrees with

Adams' last contention, it REVERSES the ALJ's decision and REMANDS to the Commissioner to determine whether Adams' past work qualifies as relevant work.

### A.   Left Arm and Shoulder Injury

Adams argues the ALJ erred by failing to properly account for the functional limitations on Adams' ability to use her left arm and shoulder. The ALJ concluded Adams had the RFC for "frequently handling and reaching in all directions on the left side." Tr. 32. According to Adams, this finding contradicts the medical opinions of the examining physician and the state agency medical examiner, who concluded Adams should be limited to only occasional reaching and handling with the left hand, arm, and shoulder.

Under step four of the evaluation analysis, the ALJ must determine the claimant's RFC. RFC is the most a claimant can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). This assessment is based on reports from treating physicians and medical consultants about the claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities. *Id.* §§ 404.1513(b)(6), 414.1513(c)(1). The ALJ must consider the limiting effects of a claimant's impairments, even those that are nonsevere, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545. The relative weight given to the evidence, however, is within the ALJ's discretion. *See Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001) (citing *Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988)). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). In reviewing these findings, the Court must defer to the ALJ's conclusions, because "[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986).

Adams fractured her left shoulder on May 10, 2011, after she fell off a wheeled-ottoman at her house. Tr. 335. Adams further injured her shoulder on May 17, 2011 when she fell again. Tr. 343. On May 21, 2011, Adams underwent surgery on her left shoulder to repair the fracture. Tr. 374. Following the surgery, Adams was ordered to keep her arm in a sling and attend physical therapy. Tr. 378. Adams attended physical therapy one time, on June 1, 2011. According to Julie Johnson, the physical therapist, Adams had "minimal to no complaints of left shoulder pain" and no complaints of left upper extremity numbness or tingling. Tr. 384. Nevertheless, Ms. Johnson concluded Adams "would benefit from physical therapy services to restore left shoulder A/PROM, joint mobility, increased left shoulder strength, static and dynamic stabilization, normalize scapulohumeral rhythm, and decreased pain." Tr. 385. Ms. Johnson further recommended Adams attend two months of physical therapy and perform home exercises to increase her strength and range of motion (ROM). Tr. 385. Despite this advice, Adams did not return to physical therapy. Tr. 387.

One year later, on June 21, 2012, Dr. Phu Thai Vo examined Adams. Adams told Vo she did not have any function in her left arm and shoulder. Tr. 421. Based largely on Adams' subjective complaints, Dr. Vo diagnosed Adams with chronic cervical pain, "residual weakness/atrophy LA, restricted ROM left shoulder with poor functional status LA, [and] chronic paresthesia LA/left hand." Tr. 423. On July 2, 2012, Dr. Michael Douglas, the state agency medical consultant, concluded Adams should be limited to only occasional reaching and handling with the left hand, arm, and shoulder. Tr. 431.

In concluding Adams had the RFC for "frequent handling and reaching in all directions on the left side," the ALJ considered the opinions of Drs. Vo and Douglas, but nevertheless concluded the overwhelming evidence in the record indicated the impairments to her left

shoulder and arm did not preclude her from working. Tr. 34, 36. The ALJ pointed to medical records from Dr. Jared Vorachard, who saw Adams on September 26, 2012, several months after Dr. Vo's diagnosis. Tr. 34. Dr. Vorachard noted a "[f]ull range of motion all joints." Tr. 596. Moreover, during a primary care visit on July 18, 2013, Chellyanne Hinds, a physician assistant, stated Adams had a "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection." Tr. 645.

The ALJ also took notice of Adams' failure to follow her physician's recommendation and attend physical therapy beyond her initial assessment, as well as her failure to take pain medication. Tr. 34. Adams' failure to follow the treatment regime prescribed by her physician reflects poorly on her credibility in determining the seriousness of her impairments. *See Johnson v. Sullivan*, 894 F.2d 683, 685 n.4 (5th Cir. 1990) ("Even if [the claimant] were found to be disabled . . . , he would still not be entitled to recover benefits inasmuch as he failed to follow the treatment regime prescribed by his physicians); *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980) (concluding conditions "controlled or controllable by treatment" were not disabling).

Moreover, as the ALJ recognized, Adams' own testimony belies her claim that she suffers from an impairment which precludes her from working. Tr. 36. At the hearing, Adams testified she was able to drive, prepare meals, clean the house, shop, exercise daily, and be the primary caregiver for her grandchildren during the day. Tr. 63, 264–65. Based on the inconsistencies between Adams' testimony about her limitations and her daily activities, the ALJ suggested Adams' statements concerning the impact of impairments on her ability to work were not entirely credible. Tr. 36; *see also Reyes v. Sullivan*, 915 F.2d 151, 155 (5th Cir. 1990) ("[T]he inconsistencies between [the claimant's] testimony about his limitations and his daily activities were quite relevant in evaluating his credibility.").

8

In light of the foregoing, the Court finds the ALJ's determination that Adams had the RFC to frequently handle and reach in all directions on the left side is supported by substantial evidence and was not the result of legal error.

**B.     Mental Impairments**

Adams argues the ALJ erred by failing to account for functional limitations resulting from Adams' mental impairments. The ALJ concluded under step two Adams had severe mental impairments, including depression, anxiety, and a history of substance use disorder, but nevertheless found Adams had the RFC to "understand, carry out, and remember detailed, but not complex, instructions, make decisions, attend and concentrate for extended periods, interact adequately with coworkers and supervisors, and respond appropriately to routine changes in the work setting." Tr. 32–33.

Adams first argues that because the ALJ concluded Adams had severe mental impairments, the ALJ must necessarily conclude Adams' RFC is limited in some way by these impairments. This argument is inapposite. A finding that certain conditions represent severe impairments does not necessitate a finding of disability. Indeed, the severe impairment analysis and the RFC determination are not coextensive—rather, the RFC assessment asks what is the most an individual can do, *despite* her limitations. *See* 20 C.F.R. § 404.1545. Even a claimant with acknowledged severe impairments must show functional limitations that prevent her from engaging in substantial gainful activity before a finding of disability is proper. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983) ("The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired by her back trouble that she was precluded from engaging in any substantial gainful activity."); *Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *6 (N.D. Tex. July 23, 2013) (concluding "[t]here is no

9

inherent contradiction in finding that [the claimant's condition] is severe at step two and also finding that he has no exertional limitations on working").

In support of her claim, Adams relies on a report from Dr. Amy Blackmon, the psychologist who examined Adams on June 13, 2012, and diagnosed her with depression, anxiety, alcohol dependence, and moderate chronic stressors (including mild social isolation, lack of employment, financial distress, longstanding alcohol dependence, and reported history of trauma). *See* Pl.'s Brief [#14] at 10; Tr. 398–402. Dr. Blackmon concluded Adams had a global assessment of functioning (GAF) of 40–45, indicating serious impairments in social or occupational functioning. Tr. 401. However, Dr. Blackmon also noted Adams maintained "good eye contact"; she was "able to respond in a coherent and appropriate fashion"; her "[t]hought processes appeared rational and goal-directed"; she was "fully oriented to person, place, date, and situation"; her estimated level of intellectual functioning is average or below; and her "concentration appeared fair." Tr. 400–01. Moreover, Dr. Blackmon noted there was no evidence of delusions, obsessions, suicidal ideation, homicidal ideation, hallucinations, or other unusual perceptual or sensory experiences. Tr. 400.

In considering Dr. Blackmon's report, the ALJ gave Adams' low GAF limited weight "as it is not consistent with the overall exam findings and record as a whole." Tr. 35. This conclusion was not erroneous, because additional medical reports suggest Adams' mental impairments were not disabling. *See Zimmerman v. Astrue*, 288 F. App'x 931, 936–37 (5th Cir. 2008) (concluding the ALJ did not err by failing to give a claimant's low GAF controlling weight, because the score was inconsistent with the testimony of a non-examining medical expert). Prior to Dr. Blackmon's assessment, on September 28, 2010, Adams was seen by Christopher Stewart, a primary physician care, who concluded Adams was "in no apparent distress, alert, oriented, and

10

pleasant." Tr. 311. During that visit, Adams told Dr. Stewart she had not used alcohol in "months." Tr. 311. Several months later, Adams went back to see Dr. Stewart and informed him she was drinking to help deal with the stress she feels as a "voluntary grandmother" caregiver for all of her grandchildren. Tr. 312. Dr. Stewart noted Adams was "[d]oing okay on increased dose of citalopram"—medication prescribed for her depression—but recommended Adams attend counseling to deal with the alcohol abuse caused by situational stress. Tr. 313.

On July 19, 2012—subsequent to Dr. Blackmon's assessment—Adams received emergency psychiatric services. Tr. 440. Adams told Dr. Ghulam Khan, the examining psychiatrist, that she had been homeless for one week and had not been taking her medication for three months. Dr. Khan observed Adams had alcohol dependency but was two months sober and was attending an outpatient rehabilitation center. Tr. 440. Dr. Khan released Adams and recommended she take her medication and attend counseling. Tr. 442.

Soon after, on August 2, 2012, Adams visited Ms. Hinds, the physician assistant, who noted Adams had been taking her medications, was "oriented in time, place, person and situation," and demonstrated "appropriate mood and affect." Tr. 608. Ms. Hinds recommended Adams continue taking her medication and attending counseling sessions. Tr. 608. Taken together, the reports from Dr. Stewart, Dr. Khan, and Ms. Hinds reveal Adams' depression and anxiety significantly improved with treatment and therefore support the ALJ's conclusion Adams was not disabled. *See Johnson*, 864 F.2d at 346 (concluding substantial evidence supported the ALJ's finding the claimant was not disabled where the claimant's depression improved with treatment).

The ALJ also considered Adams' own report about her daily activities, in which Adams states she is able to drive, prepare meals, clean the house, shop, exercise daily, and be the

primary caregiver for her grandchildren during the day. Tr. 63, 264–65. Adams also reported she maintains some level of social functioning, as she spends time with others eating, talking, and laughing. Tr. 267. Based on the inconsistencies between Adams' testimony about her limitations and her daily activities, the ALJ suggested Adams' statements concerning the impact of impairments on her ability to work were not entirely credible. Tr. 36; *see also Reyes v. Sullivan*, 915 F.2d at 155.

The Court finds the ALJ's conclusion that Adams' severe mental impairments were not disabling is supported by substantial evidence and was not the result of legal error.

## C.   Past Relevant Work

Adams contends the ALJ erred in determining she was not disabled because she was capable of performing her past relevant work as a sales clerk, housekeeper, and security guard. The Court agrees.

According to Adams, her past jobs as a sales clerk, housekeeper, and security cannot be considered past relevant work, because she did not earn enough in a year to be engaged in "substantial gainful activity." Past relevant work is defined as work that (1) was performed within the last fifteen years, (2) lasted long enough for the claimant to learn to do it, and (3) was substantial gainful activity. 20 C.F.R. §§ 416.960(b)(1), 416.965(a); *see also Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014). Substantial gainful activity is defined as:

> work activity that is both substantial and gainful.
>
> (a) Substantial work activity. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) Gainful work activity. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

20 C.F.R. §§ 404.1572, 404.1510.

The regulations direct the Commissioner to "consider all of the medical and vocational evidence in [the claimant's] file to decide whether or not [the claimant has] the ability to engage in substantial gainful activity." 20 C.F.R. §§ 404.1571, 416.971. "Generally, if [the claimant] worked for substantial earnings, [the Commissioner] will find that [the claimant is] able to do substantial gainful activity. However, the fact that [the claimant's] earnings were not substantial will not necessarily show that [the claimant is] not able to do substantial gainful activity." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).

Accordingly, if a claimant's monthly earnings exceed the amounts set forth in Section 404.1574(b)(2) and Section 416.974(b)(2), the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). If a claimant's monthly earnings fall below these amounts, the claimant has not engaged in substantial gainful activity and the Commissioner "will generally not consider other information in addition to [] earnings." 20 C.F.R. §§ 404.1574(b)(3), 416.974(b)(3). The Commissioner will, however, consider information beyond earnings "if there is evidence indicating that [the claimant] may be engaging in substantial gainful activity or that [the claimant is] in a position to control when earnings are paid to [the claimant] or the amount of wages paid to [the claimant]." *Id.*

Based on these regulations, the Fifth Circuit has concluded "a rebuttable presumption against substantial gainful activity arises where a disabled claimant's earnings are below the threshold" for substantial gainful activity set forth in Section 404.1574(b)(2) and Section 416.974(b)(2). *Copeland*, 771 F.3d at 925.

According to Adams, her average monthly earnings did not meet the substantial gainful activity threshold, and as such, the ALJ erred in finding her past work constituted relevant work.

During the relevant time period, the threshold average monthly earnings set by the regulations and Adams' average monthly earnings are as follows:

| Year | Threshold Average Monthly Earnings[1] | Adams' Average Monthly Earnings[2] |
|------|---------------------------------------|-------------------------------------|
| 1999 | $700 | $44.98 |
| 2000 | $700 | $251.35 |
| 2001 | $740 | $453.85 |
| 2002 | $780 | |
| 2003 | $800 | |
| 2004 | $810 | |
| 2005 | $830 | $500.22 |
| 2006 | $860 | $75.86 |

Based on the information alleged in Adams' brief, her average monthly earnings fell far below the substantial gainful activity threshold. Yet, in his opinion, the ALJ did not make a finding as to whether Adams' past earnings reached the threshold, nor did he apply—as *Copeland* requires—the rebuttable presumption against substantial gainful activity where Adams' earnings fell below the threshold. As a result, the ALJ erred at step four in concluding Adams' past relevant work included her work as a sales clerk, housekeeper, and security guard.

## Conclusion

The fourth sentence of 42 U.S.C. § 405(g) provides that "[t]he [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

---

[1] These amounts are derived from the charts set forth in Section 404.1574(b)(2), Section 416.974(b)(2), and at *Substantial Gainful Activity*, SOCIAL SECURITY, https://www.ssa.gov/OACT/COLA/sga.html.

[2] *See* Pl.'s Brief [#14] at 12–13.

cause for a rehearing." 42 U.S.C. § 405(g). This provision gives the district court authority to remand a case if it determines the Commissioner incorrectly applied the law or made improper findings of fact. *Murkeldove v. Astrue*, 635 F.3d 784, 793 (5th Cir.2011) (citing *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996) for the proposition that a sentence four remand is appropriate where the district court finds the Commissioner (or the ALJ)'s decision is unsupported by substantial evidence or the result of legal error). Because the Court concludes the ALJ erred in finding Adams' past work constitutes relevant work without considering whether Adams' earnings reached the substantial gainful activity threshold, remand for further proceedings is necessary in this case. On remand, if the ALJ determines Adams does not have any past relevant work, he must determine under step five whether Adams is able to do other work considering her age, education, work experience, and RFC.

Accordingly,

IT IS ORDERED that the Report and Recommendation of the United States Magistrate Judge [#17] is ACCEPTED; and

IT IS FINALLY ORDERED that the decision of the Social Security Commissioner is REVERSED, and this case is REMANDED to the Commissioner of the Social Security for further proceedings consistent with this opinion.

SIGNED this the 10th day of August 2016.

                                                  /s/ Sam Sparks
                                        SAM SPARKS
                                        UNITED STATES DISTRICT JUDGE